```
                          FILED
              CLERK, U.S. DISTRICT COURT

                     JUN - 2 2010

              CENTRAL DISTRICT OF CALIFORNIA
              BY                      DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2010 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR **CR 10 00567** |
| Plaintiff, | ) I N D I C T M E N T |
| v. | ) [18 U.S.C. § 1962(d): Racketeer |
| RAFAEL MUNOZ GONZALEZ, | ) Influenced and Corrupt |
| aka "Cisco," | ) Organizations Conspiracy; |
| aka "C," | ) 18 U.S.C. § 1962(c): Racketeer |
| CESAR MUNOZ GONZALEZ, | ) Influenced and Corrupt |
| aka "Blanco," | ) Organizations; 18 U.S.C. |
| aka "B," | ) § 1959: Violent Crime in Aid of |
| ABRAHAM ALDANA, | ) Racketeering; 21 U.S.C. §§ 846, |
| aka "Listo," | ) 841(a)(1), 841(b)(1)(A): |
| MICHAEL ANTHONY TORRES, | ) Conspiracy to Distribute |
| aka "Mikey," | ) Methamphetamine; 21 U.S.C. |
| ANGEL FRANK TORRES, | ) §§ 841(a)(1), 841(b)(1)(B): |
| aka "Smiley," | ) Possession with Intent to |
| STEVEN NUNEZ, | ) Distribute Methamphetamine; |
| aka "Flaco," | ) 18 U.S.C. §§ 924(c)(1)(A)(i), |
| DANNY ARTHUR NUNEZ, | ) 924(c)(1)(B)(i): Use of a |
| aka "Moe," | ) Firearm in Furtherance of a |
| ALEJANDRO TRUJILLO, | ) Crime of Violence or Drug |
| aka "Spantos," | ) Trafficking Crime; 18 U.S.C. |
| MARIO ALBERTO SANDOVAL, | ) § 922(g)(1): Felon in |
| aka "Sonny," | ) Possession of Firearms; |
| aka "Junior," | ) 21 U.S.C. § 860a: Distributing |
| PATRICIA ANA AYALA-MARTINEZ, | ) Possession With Intent to |
| aka "Dreams," | ) Distribute Methamphetamine on |
| ADRIAN RODRIGUEZ, | ) Premises Where Children are |
| aka "Trips," | ) Present and Reside; 18 U.S.C. |
| PAUL MEYERKAMP, | ) §§ 113(a)(1), 113(a)(3): |
| SARA EMERT, | ) Assault with a Dangerous |
| | ) Weapon, Assault with Intent to |
| | ) Commit Murder within |

| | |
|---|---|
| OSCAR ZAMORA,<br>     aka "Chino,"<br>ALEX RAMIREZ,<br>HENRY ZABALA, and<br>VICTOR FLORES,<br><br>                    Defendants. | )   Territorial Jurisdiction;<br>)   21 U.S.C. § 843(b): Use of<br>)   Communication Facility in<br>)   Furtherance of Drug<br>)   Trafficking; 18 U.S.C.<br>)   § 982(a)(1) and 21 U.S.C.<br>)   § 853(a): Criminal Forfeiture]<br>) |

The Grand Jury charges:

<u>GENERAL ALLEGATIONS</u>

1.   At all relevant times, defendants RAFAEL MUNOZ GONZALEZ, also known as ("aka") "Cisco," aka "C" ("GONZALEZ"); CESAR MUNOZ GONZALEZ, aka "Blanco," aka "B" ("BLANCO"); ABRAHAM ALDANA, aka "Listo" ("ALDANA"); MICHAEL ANTHONY TORRES, aka "Mikey" ("M. TORRES"); ANGEL FRANK TORRES, aka "Smiley" ("A. TORRES"); STEVEN NUNEZ, aka "Flaco" ("S. NUNEZ"); DANNY ARTHUR NUNEZ, aka "Moe" ("D. NUNEZ"); ALEJANDRO TRUJILLO, aka "Spantos" ("TRUJILLO"); MARIO ALBERTO SANDOVAL, aka "Sonny," aka "Junior" ("SANDOVAL"); PATRICIA ANA AYALA-MARTINEZ, aka "Dreams" ("AYALA"); ADRIAN RODRIGUEZ, aka "Trips" ("RODRIGUEZ"); PAUL MEYERKAMP ("MEYERKAMP"); SARA EMERT ("EMERT"); OSCAR ZAMORA, aka "Chino" ("ZAMORA"); ALEX RAMIREZ ("RAMIREZ"); and HENRY ZABALA ("ZABALA"), and others, were members and associates of an organization engaged in, among other things, conspiracy to traffic narcotics, narcotics trafficking, murder, conspiracy to commit murder, attempted murder, and witness intimidation.  At all relevant times, this organization, known as the "Puente-13" gang, operated in the Central District of California and elsewhere.

<u>BACKGROUND OF THE PUENTE-13 STREET GANG</u>

2.   The Puente-13 gang is a multi-generational, Hispanic

2

street gang that was founded in the early 1950s in La Puente, California. At the time of its conception, it was known as the "Bridgetown Gentlemen" or "Old Town Puente," and was comprised of Hispanic males who engaged in narcotics distribution and other street crimes, and viewed themselves as La Puente's guardians against outside gangs. Later, the gang became known simply as "Puente," or "Puente-13." Over the years, it has dramatically expanded its membership to number approximately 600 individuals, and expanded its territory into the neighboring Southern California cities of Walnut, Industry, Hacienda Heights, and West Covina. There are currently at least 14 subsets, or "cliques," of the Puente-13 gang. New cliques were founded by members living in a particular geographical area, and named accordingly (i.e. Happy Homes was founded by residents of Hacienda Heights; cliques such as Blackwood Street, Northam Street, and Dial Avenue were founded by members residing on those respective streets in La Puente).

3. The Puente-13 gang is controlled by senior members of the individual cliques, who control admission into the gang. A new initiate may be admitted to the Puente-13 gang only after the approval of senior leaders, and after submitting to a violent beating ("getting jumped in") at the hands of other members. Some individuals are allowed to bypass this initiation process and are granted admission into Puente-13 ("walked in") based upon a senior leader's authority, or by earning significant drug sales commissions on behalf of the gang. These individuals also claim Puente-13 gang membership.

4. Puente-13 members frequently identify each other

through the use of hand gestures designating "P" for Puente, and/or various symbols of the members' respective cliques (i.e. "B" for Blackwood). Members commonly wear clothing depicting these same symbols (i.e. baseball caps for the Philadelphia Phillies, whose team insignia includes a "P", for Puente). In many documented instances, members have even specially designed their own apparel (i.e. screen-printed t-shirts reading "Blackwood Mob"). Gang tattoos, monikers, slogans, and spray-painted graffiti on street signs and walls are also commonly used to identify members and territory controlled by the gang. Additionally, since the senior gang members controlling Puente-13 are also members or associates of the Mexican Mafia prison gang, the number 13 (signifying M, the thirteenth letter of the alphabet) is commonly used to demonstrate that affiliation and loyalty.

5.     Puente-13 encompasses large portions of both the City of La Puente and unincorporated parts of Los Angeles County within the San Gabriel Valley. In the city of La Puente, Puente-13's boundaries are Orange Avenue in the west, Francisquito Avenue in the north, Valley Boulevard in the south, and Azusa Avenue in the east. The gang also controls portions of unincorporated Los Angeles County, specifically within those areas known as Hacienda Heights and Valinda.

<u>MEXICAN MAFIA AUTHORITY FOR PUENTE-13</u>

6.     The Puente-13 gang is loyal and committed to the "Mexican Mafia," also known as "La Eme." The Mexican Mafia is a prison gang that originated within the prison system in order to control and direct the activities of Southern California Hispanic

street gangs.  "Made" members of the Mexican Mafia have assumed
authority for different regions in Southern California.
Typically, a "made" member is a prison inmate who comes from the
ranks of a local Hispanic street gang, including the Puente-13
gang, and exercises control and direction over his territory both
from within prison and from outside prison following his release.
The Mexican Mafia leaders issue directions and orders, including
orders to kill rival gang members, which are referred to as
"green-lights."  Those orders are to be executed by California
street gang members, including members of Puente-13, and are
understood by Puente-13 gang members as opportunities to gain
elevated status within the organization or potentially become a
"made" member of the organization.

7.    The Mexican Mafia has established rules to govern acts
of violence committed by local Hispanic street gang members and
associates, including those of Puente-13.  The Mexican Mafia thus
requires Puente-13 gang members and associates to adhere to
protocols for the conduct of violent attacks, narcotics
trafficking, and murders, including the issuance of "green light"
authorizations for murder and violence.  Failure to adhere to
Mexican Mafia rules can lead to the issuance of a "green light,"
directing an attack on the offending member, or the requirement
that money be paid.  "Green lights" are also frequently issued in
retaliation for a perceived "disrespect" to a Mexican Mafia
leader, to punish the unauthorized collection of "tax" payments
in a neighborhood controlled by the Puente-13 gang, or to
sanction individuals who traffic in narcotics without the gang's
authorization or without paying the required tax to

Puente-13 and the Mexican Mafia.

8.    Mexican Mafia and Puente-13 gang members and associates regularly exploit prison visits, telephone calls, policies concerning letter-communications with attorneys, and prison monetary accounts in order to generate income from narcotics trafficking and other crimes of the enterprise, so as to promote the criminal enterprise and direct the operation of the Puente-13 gang from within prison.  Mexican Mafia leaders also require regular payments from Puente-13 members and associates who are incarcerated.

9.    Mexican Mafia members collect "taxes" from the members and associates of Southern California street gangs, including Puente-13, in the form of a share of the proceeds from the gangs' drug sales and violent conduct.  Puente-13 gang leaders, in turn, extort money from their subordinates, local drug traffickers, and members of other gangs.  A portion of the "taxes" collected by the Puente-13 gang leaders is then paid to Mexican Mafia leaders who are incarcerated.

<u>LEADERSHIP OF THE MEXICAN MAFIA</u>

10.    Currently one Puente-13 gang member is also a validated Mexican Mafia member.  He is defendant GONZALEZ, and he claims as his territory, through the Mexican Mafia, the entire San Gabriel Valley, and parts of Orange County, in Southern California.  The Mexican Mafia members use Mexican Mafia leaders and associates to communicate orders and authorizations to Puente-13 gang leaders, members, and associates, and to receive information about the activities of the Puente-13 gang.

COUNT ONE

[18 U.S.C. § 1962(d)]

1.   Paragraphs 1 through 10 of the General Allegations are re-alleged and incorporated by reference as though fully set forth herein.

2.   The Puente-13 gang, including its leadership, membership, and associates, constitutes an "enterprise," as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact.  The enterprise engaged in, and its activities affected, interstate and foreign commerce.  The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

PURPOSES OF THE ENTERPRISE

3.   The purposes of the Puente-13 gang, include, but are not limited to, the following:

a.   Enriching members and associates of the Puente-13 gang and Mexican Mafia through, among other things, the control of and participation in the distribution of narcotics in the territory controlled by the Puente-13 gang.

b.   Maintaining the control and authority of the Puente-13 gang over the neighborhoods it controls, often through threats and acts of violence.

c.   Preserving, protecting, and expanding the power of the Puente-13 gang through the use of intimidation, violence, threats of violence, assault, and murder.

d.   Promoting and enhancing the authority of the Puente-13 gang members and associates.

7

e.      Exposing and punishing Puente-13 gang members and associates, as well as those living within Puente-13 territory, who cooperate with law enforcement.

f.      Providing protection from physical assaults and excessive extortion to Puente-13 members and associates when those individuals enter the prison system.

## THE MEANS AND METHODS OF THE ENTERPRISE

4.    The means and methods by which the defendants and their co-racketeers conduct and participate in the conduct of the affairs of the Puente-13 gang include:

a.      Members and associates of the Puente-13 gang commit, attempt, and threaten to commit acts of violence to protect and expand the enterprise's criminal operation, including assaults, murder, intimidation, and threats of violence directed against rival gang members and witnesses in criminal cases, and to violently discipline insubordinate members of the enterprise.

b.      Members and associates of the Puente-13 gang promote a climate of fear through acts of violence and threats to commit acts of violence.

c.      To enforce the authority of the Puente-13 gang, members and associates use the enterprise to murder, attempt to murder, assault, and threaten those who pose a threat to the enterprise.

d.      Members and associates of the Puente-13 gang engage in trafficking controlled substances as a means to generate income.

THE RICO CONSPIRACY CHARGE

5.   Beginning on a date unknown, and continuing to on or about June 2, 2010, in Los Angeles County, within the Central District of California, and elsewhere, defendants GONZALEZ, BLANCO, ALDANA, M. TORRES, A. TORRES, S. NUNEZ, D. NUNEZ, TRUJILLO, SANDOVAL, AYALA, RODRIGUEZ, MEYERKAMP, EMERT, ZAMORA, RAMIREZ, and ZABALA, and others, being persons employed by and associated with the Puente-13 criminal enterprise, as described in paragraphs 1 through 10 of the General Allegations, and paragraphs 1 through 91 of Section B of this Count, which are reincorporated herein, which enterprise engaged in and the activities of which affected interstate and foreign commerce, unlawfully and knowingly combined, conspired, confederated, and agreed together and with each other to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of

a.   Multiple acts chargeable under the following provisions of state law, including:

i.   Murder, in violation of California Penal Code Sections 31, 182, 187, 189, and 664;

ii.   Extortion, in violation of California Penal Code Sections 31, 182 and 520, and 664;

b.   Acts involving the distribution of controlled substances and conspiracy to distribute controlled substances,

9

1  including methamphetamine and cocaine, in violation of Title 21,
2  United States Code, Sections 841(a)(1) and 846; and

3         c.    Multiple acts indictable under the following
4  provisions of federal law:

5               i.    Extortion, in interference with interstate
6  commerce, in violation of Title 18, United States Code, Section
7  1951; and

8               ii.   Witness tampering, in violation of Title 18,
9  United States Code, Section 1512.

10        It was a further part of the conspiracy that each defendant
11  agreed that a conspirator would commit at least two acts of
12  racketeering in the conduct of the affairs of the enterprise.

13  A.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE
14       ACCOMPLISHED

15        The objects of the conspiracy were to be accomplished in
16  substance as follows:

17        1.    Defendant GONZALEZ, as a member of the Mexican Mafia
18  and as the leader of the Puente-13 gang, would exercise
19  leadership over all of Puente-13's criminal activities, collect
20  drug tax payments from Puente-13 members' and associates' drug
21  dealing activities, direct Puente-13 members and associates to
22  exert control in prison and over the neighborhoods controlled by
23  Puente-13, and target rivals and enemies of Puente-13.

24        2.    Defendant BLANCO would assist defendant GONZALEZ in
25  maintaining control over the drug trafficking operations of
26  Puente-13, including by supplying narcotics to, and collecting
27  drug taxes from, Puente-13 members and associates, as well as by
28  operating drug stash-houses.

3.   Defendant ALDANA would assist defendant GONZALEZ in maintaining control over Puente-13, including by assisting defendant GONZALEZ in carrying out retributive attacks against Puente-13's rivals, collecting taxes from Puente-13 drug traffickers, and supplying narcotics to Puente-13 members and associates.

4.   Defendants A. TORRES and S. NUNEZ would sell and manufacture drugs on behalf of Puente-13, as well as carry out violent acts, including murder, against Puente-13's rivals.

5.   Defendant TRUJILLO would exercise leadership on behalf of Puente-13 within the prison system, including by collecting drug taxes from other inmates and helping to retaliate against Puente-13's incarcerated rivals, and would sell drugs on behalf of Puente-13.

6.   Defendant EMERT would sell drugs on behalf of Puente-13 and would assist Puente-13's leaders by relaying messages and using her residence as a place to store guns and narcotics.

7.   Defendant ZAMORA would collect drug tax payments from Puente-13 members and associates, and sell drugs, on defendant GONZALEZ' behalf.

8.   Defendant D. NUNEZ would sell drugs, and carry out violent attacks, on behalf of Puente-13.

9.   Defendants M. TORRES, ZABALA, and RAMIREZ would sell drugs on behalf of Puente-13.

10.   Defendant AYALA would help defendant GONZALEZ communicate with, and make drug tax payments to, defendant GONZALEZ' Mexican Mafia counterparts.

11.   Defendant SANDOVAL would collect drug tax payments on

11

1  defendant GONZALEZ's behalf as well as buy and sell
2  methamphetamine and cocaine in Puente-13 territory.
3      12.  Defendant MEYERKAMP would collect drug tax payments on
4  defendant GONZALEZ' behalf and intimidate witnesses and carry out
5  violent attacks on behalf of Puente-13.
6      13.  Defendant RODRIGUEZ would collect drug tax payments
7  from prison inmates on behalf of Puente-13 and would help
8  retaliate against Puente-13's perceived rivals in prison.
9  B.   OVERT ACTS
10     In furtherance of the conspiracy, and to accomplish the
11 objects of the conspiracy, defendants GONZALEZ, BLANCO, ALDANA,
12 M. TORRES, A. TORRES, S. NUNEZ, D. NUNEZ, TRUJILLO, SANDOVAL,
13 AYALA, RODRIGUEZ, MEYERKAMP, EMERT, ZAMORA, RAMIREZ, and ZABALA,
14 and others known and unknown to the Grand Jury, committed various
15 overt acts, on or about the following times and dates, within the
16 Central District of California and elsewhere, including but not
17 limited to the following:
18     1.  On May 24, 1997, defendant TRUJILLO stole a vehicle in
19 order to enhance his position within the Puente-13 gang.
20     2.  On January 26, 2000, defendants GONZALEZ and BLANCO, at
21 a residence located in La Puente, California, possessed with
22 intent to distribute approximately 81 grams of methamphetamine,
23 as well as possessed packaging materials, a scale, precursor
24 chemicals, and a stolen .380 caliber pistol.
25     3.  On January 30, 2002, at a residence located in La
26 Puente, defendant A. TORRES possessed approximately 15 grams of
27 methamphetamine for sale, as well as possessed two firearms, one
28 of which was stolen and the other of which had an obliterated

12

serial number, and diluent chemicals used for the manufacture of methamphetamine.

4.  On October 9, 2002, at a residence located in West Covina, California, defendant S. NUNEZ possessed with intent to distribute 131 grams of methamphetamine, as well as possessed pay/owe sheets, two scales, baggies, ingredients for the production of methamphetamine, a stolen handgun, a shotgun, and several assault rifles.

5.  On May 14, 2003, an unindicted co-conspirator deposited $200 in drug taxes into the prison account of defendant GONZALEZ.

6.  On July 5, 2003, an unindicted co-conspirator deposited $100 in drug taxes into the prison account of defendant GONZALEZ.

7.  On May 24, 2003, at a residence located in La Puente, defendant SANDOVAL possessed with intent to distribute approximately nine grams of methamphetamine as well as possessed a digital scale.

8.  On August 10, 2004, an unindicted co-conspirator deposited $150 in drug taxes into the prison account of defendant GONZALEZ.

9.  On December 1, 2004, defendant D. NUNEZ possessed with intent to distribute approximately .26 grams of methamphetamine.

10. On July 3, 2006, defendants GONZALEZ, BLANCO, A. TORRES, and S. NUNEZ conspired to murder D.D. to punish D.D. for impermissibly collecting drug tax payments on defendant GONZALEZ' behalf.

11. On July 3, 2006, defendants A. TORRES and S. NUNEZ murdered victim D.D. outside of an apartment complex.

12. On July 6, 2006, defendants M. TORRES, A. TORRES, S.

NUNEZ, BLANCO, and GONZALEZ, at a residence located on Fourth
Avenue in La Puente possessed with intent to distribute
approximately 98 grams of methamphetamine, as well as possessed
four digital scales, a 9mm handgun, multiple cellular phones, a
short-barreled shotgun, two bullet-proof vests, a grenade, a .45
caliber pistol, a cane sword, and framed artwork depicting
Mexican Mafia images.

13.   On February 21, 2007, in a vehicle in Valinda,
defendant S. NUNEZ possessed with intent to distribute
approximately .81 grams of methamphetamine.

14.   On March 21, 2007, in a vehicle in Valinda, California,
defendant S. NUNEZ possessed with intent to distribute
approximately .14 grams of methamphetamine.

15.   On April 9, 2007, defendants AYALA and GONZALEZ sent an
unindicted Mexican Mafia co-conspirator a portion of defendant
GONZALEZ' drug proceeds.

16.   On May 11, 2007, an unindicted co-conspirator possessed
with intent to distribute approximately 357 grams of
methamphetamine as well as possessed approximately $207,000 in
drug proceeds and a firearm.

17.   On July 25, 2007, defendant AYALA sent a letter to an
unindicted Mexican Mafia co-conspirator in which she informed him
that defendant GONZALEZ was concerned that the unindicted Mexican
Mafia co-conspirator had not received a recent payment from
defendant GONZALEZ.

18.   On August 28, 2007, at a motel in Glendora, California,
defendant S. NUNEZ possessed a loaded, stolen Colt .45 pistol.

19.   In October 2007, defendant GONZALEZ met with several

14

1 | unindicted co-conspirators, accused them of purchasing
2 | methamphetamine from an outside source, and demanded that the
3 | unindicted co-conspirators pay a further drug tax to defendant
4 | GONZALEZ.

5 |     20.  On October 2, 2007, at an apartment in Whittier,
6 | California, an unindicted co-conspirator possessed with intent to
7 | distribute approximately 148 grams of methamphetamine, as well as
8 | possessed 15 firearms, night vision cameras, approximately
9 | $85,000 in U.S. currency, flasks for the production of
10 | methamphetamine, pay/owe sheets, and a scale.

11 |     21.  On October 7, 2007, defendants AYALA and GONZALEZ sent
12 | an unindicted Mexican Mafia co-conspirator a portion of defendant
13 | GONZALEZ' drug proceeds.

14 |     22.  In November 2007, defendant GONZALEZ instructed Puente-
15 | 13's senior members to require each Puente-13 clique to sell an
16 | ounce of methamphetamine per week.

17 |     23.  On November 18, 2007, using vague and coded language in
18 | a telephone conversation, an unindicted Mexican Mafia co-
19 | conspirator asked defendant AYALA to tell defendant GONZALEZ that
20 | defendant GONZALEZ' Mexican Mafia associates had authorized a
21 | murder.

22 |     24.  On November 26, 2007, using vague and coded language in
23 | a telephone conversation, an unindicted co-conspirator told
24 | another unindicted co-conspirator that the second unindicted co-
25 | conspirator, along with the second unindicted co-conspirator's
26 | associates, still owed drug tax proceeds to both defendants
27 | GONZALEZ and BLANCO.

28 |     25.  On November 26, 2007, using vague and coded language in

a telephone conversation, an unindicted co-conspirator told another unindicted co-conspirator that the second unindicted co-conspirator had been hiding his drug sales and drug proceeds from defendants GONZALEZ and BLANCO.

26. On November 26, 2007, using vague and coded language in a telephone conversation, an unindicted co-conspirator told another unindicted co-conspirator that the first unindicted co-conspirator and defendant SANDOVAL were aggressively collecting, on behalf of defendant GONZALEZ, drug debts from other Puente-13 drug dealers.

27. On January 18, 2008, using vague and coded language in a telephone conversation, unindicted co-conspirators discussed how defendant GONZALEZ was aggressively collecting drug tax payments from Puente-13 drug dealers and requiring Puente-13 drug dealers to sell methamphetamine on defendant GONZALEZ's behalf.

28. On February 2, 2008, two unindicted co-conspirators discussed defendant SANDOVAL's distribution of cocaine with Puente-13, as well as defendant SANDOVAL's drug tax debt to defendant GONZALEZ.

29. On February 4, 2008, using vague and coded language in a telephone conversation, an unindicted co-conspirator made arrangements with another unindicted co-conspirator so that the second unindicted co-conspirator could make his drug tax payment to defendant GONZALEZ.

30. On February 4, 2008, using vague and coded language in a telephone conversation, defendant D. NUNEZ asked an unindicted co-conspirator if the unindicted co-conspirator wanted D. NUNEZ to accompany the unindicted co-conspirator on a visit to

negotiate drug taxes owed to defendant GONZALEZ.

31. On February 4, 2008, using vague and coded language in a telephone conversation, defendant D. NUNEZ offered to sell pound quantities of marijuana to an unindicted co-conspirator.

32. On February 4, 2008, using vague and coded language in a telephone conversation, an unindicted co-conspirator discussed with another unindicted co-conspirator how to make arrangements to pay drug taxes to defendant GONZALEZ.

33. On February 15, 2008, using vague and coded language in a telephone conversation, an unindicted co-conspirator told a second unindicted co-conspirator that the first unindicted co-conspirator had just purchased 2.2 grams of methamphetamine for $120, for redistribution, from defendant RAMIREZ.

34. In or about February 2008, defendant RAMIREZ distributed several pounds of methamphetamine on behalf of Puente-13.

35. On February 14, 2008, defendant D. NUNEZ stole a vehicle and possessed approximately $926 in drug proceeds.

36. On February 17, 2008, using vague and coded language in a telephone conversation, an unindicted co-conspirator told a second unindicted co-conspirator that defendant D. NUNEZ was, prior to a recent arrest, supposed to find narcotics for the first unindicted co-conspirator.

37. On February 29, 2008, an unindicted co-conspirator told a relative of an unindicted co-conspirator that the unindicted co-conspirator was required to forfeit his Chevrolet Impala to defendant GONZALEZ as payment for the unindicted co-conspirator's drug debt.

38.   On February 29, 2008, an unindicted co-conspirator transferred ownership of his Chevrolet Impala to defendant GONZALEZ.

39.   On March 8, 2008, defendant D. NUNEZ and unindicted co-conspirators plotted to commit a retaliatory attack against rivals of Puente-13 following an attack against a Puente-13 member.

40.   On March 11, 2008, two unindicted co-conspirators arranged a meeting with defendant GONZALEZ to allow defendant GONZALEZ to inspect narcotics.

41.   On March 11, 2008, defendant D. NUNEZ spray-painted a taunting graffiti message on a brick wall in La Puente.

42.   On March 13, 2008, an unindicted co-conspirator possessed with intent to distribute approximately 170 grams of methamphetamine and 11 kilograms of marijuana, as well as possessed approximately 7 firearms.

43.   On March 13, 2008, an unindicted co-conspirator possessed with intent to distribute approximately 73 grams of methamphetamine, as well as possessed diluent chemicals, scales, packaging materials, and a firearm.

44.   In August 2008, defendant ALDANA distributed ounce-quantities of methamphetamine, and collected drug proceeds from Puente-13 drug dealers, on behalf of defendant GONZALEZ.

45.   In August 2008, defendant GONZALEZ issued a directive to all Puente-13 members requiring them to purchase their methamphetamine from defendants GONZALEZ and BLANCO exclusively.

46.   On August 14, 2008, defendants GONZALEZ and RAMIREZ seized a vehicle from an unindicted co-conspirator as payment for

drug taxes owed by the unindicted co-conspirator.

47. In September 2008, defendants GONZALEZ, ALDANA, and S. NUNEZ conspired to rob a drug stash-house in La Puente that contained a half-pound of methamphetamine and three firearms.

48. On October 2, 2008, defendants AYALA and GONZALEZ sent an unindicted Mexican Mafia co-conspirator a portion of defendant GONZALEZ' drug proceeds

49. In October and November 2008, defendant ZAMORA distributed methamphetamine to Puente-13 members and associates.

50. In November 2008, unindicted co-conspirators demanded that Victim 1 pay drug taxes to the gang while he was incarcerated in county jail.

51. In November 2008, defendants GONZALEZ, ALDANA, and TRUJILLO, and others, agreed to carry out a beating against rival gang members at the Los Angeles County Pitchess Detention Center - East ("East Max") in retaliation for the death of one of defendant GONZALEZ' close associates.

52. In November 2008, defendants GONZALEZ and MEYERKAMP collected drug proceed taxes from Puente-13 members and associates at the Los Angeles Metropolitan Detention Center and the San Bernardino County Jail.

53. On November 3, 2008, defendant TRUJILLO possessed with intent to distribute approximately 4.2 grams of methamphetamine in Hacienda Heights.

54. On November 23, 2008, using vague and coded language in a telephone conversation, defendant ALDANA and another unindicted Mexican Mafia co-conspirator discussed defendant GONZALEZ' plan for Puente-13 members to beat rival gang members at East Max.

19

55. On November 23, 2008, using vague and coded language in a telephone conversation, an unindicted co-conspirator told defendant ALDANA that the unindicted co-conspirator sympathized with defendant GONZALEZ's plan to attack rival gang members in retaliation for the death of defendant GONZALEZ' close associate.

56. On November 23, 2008, unindicted co-conspirators discussed how defendant TRUJILLO was, on defendant GONZALEZ' behalf, seizing control of portions of East Max.

57. On November 26, 2008, defendant TRUJILLO sent a letter in which defendant TRUJILLO asked an unindicted Mexican Mafia co-conspirator for assistance in carrying out a beating against rival gang members at East Max.

58. On November 30, 2008, using vague and coded language in a telephone conversation, an unindicted co-conspirator confirmed to another unindicted co-conspirator that defendant GONZALEZ and other Puente-13 members were still authorized to carry out a beating against rival gang members at East Max.

59. On December 3, 2008, defendant TRUJILLO possessed a letter in his jail cell in which an unindicted co-conspirator granted defendants TRUJILLO and GONZALEZ permission to beat rival gang members at East Max.

60. On December 4, 2008, at his residence in West Covina, defendant ALDANA possessed with intent to distribute approximately 3.17 grams of methamphetamine, as well as possessed a letter in which he described his new leadership position within Puente-13.

61. On December 5, 2008, using vague and coded language in a telephone conversation, defendant RODRIGUEZ told an unindicted

1  co-conspirator that an inmate at East Max had deposited a drug

2  tax payment into defendant RODRIGUEZ' inmate account.

3      62.  On December 7, 2008, using vague and coded language in

4  a telephone conversation, an unindicted co-conspirator stated

5  that defendants TRUJILLO and RODRIGUEZ were responsible for

6  collecting remittances from a section of the inmate population at

7  East Max.

8      63.  On December 15, 2008, Victim 1 transferred

9  approximately $300, through a money order, to defendant GONZALEZ

10 in an attempt to satisfy a drug debt.

11     64.  On December 31, 2008, defendant AYALA sent a letter to

12 an unindicted Mexican Mafia co-conspirator that included a

13 photograph of defendant GONZALEZ.

14     65.  On January 6, 2009, defendant ZABALA, using vague and

15 coded language in text messages on a cell phone, asked an

16 unindicted co-conspirator to help defendant ZABALA sell a

17 quarter-ounce of methamphetamine.

18     66.  On January 8, 2009, defendant ZABALA, using vague and

19 coded language in text messages on a cell phone, informed an

20 unindicted co-conspirator that defendant ZABALA had

21 methamphetamine for sale.

22     67.  On January 15, 2009, defendant ZAMORA collected, on

23 behalf of defendant GONZALEZ, a $5,000 drug tax payment from the

24 associate of an unindicted co-conspirator.

25     68.  On January 16, 2009, an unindicted co-conspirator

26 stabbed Victim 1 over an unpaid drug debt owed by Victim 1 to

27 defendant GONZALEZ and Puente-13.

28     69.  On January 17, 2009, using vague and coded language in

1  a telephone conversation, defendants ALDANA and EMERT discussed

2  acquiring marijuana from defendant D. NUNEZ and others.

3      70.   On January 17, 2009, using vague and coded language in

4  a telephone conversation, defendant ALDANA asked an unindicted

5  co-conspirator whether the unindicted co-conspirator had timely

6  paid his drug taxes to the unindicted co-conspirator's superiors

7  in Puente-13, and instructed the unindicted co-conspirator to

8  alert defendant EMERT once the payment was made.

9      71.   On January 17, 2009, using vague and coded language in

10  a telephone conversation, defendants ALDANA and EMERT reminded an

11  unindicted co-conspirator that the unindicted co-conspirator

12  still owed drug proceeds to the gang.

13      72.   On January 17, 2009, using vague and coded language in

14  a telephone conversation, defendant ALDANA told defendant S.

15  NUNEZ that defendant ALDANA intended to pressure an unindicted

16  co-conspirator to pay drug taxes or face consequences.

17      73.   On January 30, 2009, using vague and coded language in

18  a telephone conversation, defendant SANDOVAL offered to help an

19  unindicted co-conspirator find someone willing to smuggle

20  narcotics into prison for the unindicted co-conspirator.

21      74.   On February 10, 2009, using vague and coded language in

22  a telephone conversation, defendant ALDANA told defendants EMERT

23  and S. NUNEZ to tell defendant GONZALEZ that defendant ALDANA was

24  not cooperating with law enforcement.

25      75.   On February 10, 2009, using vague and coded language in

26  a telephone conversation, defendant ALDANA instructed defendant

27  EMERT to find out if an unindicted co-conspirator was collecting

28  drug taxes on defendant ALDANA's behalf and, if so, to help

22

1  defendant ALDANA stop the unindicted co-conspirator.

2      76.   On February 27, 2009, using vague and coded language in

3  a telephone conversation, following defendant S. NUNEZ' arrest,

4  defendant BLANCO reassured defendant S. NUNEZ and offered to

5  place money on defendant S. NUNEZ' prison bank account.

6      77.   On March 3, 2009, defendant AYALA sent an unindicted

7  Mexican Mafia co-conspirator a letter informing him that

8  defendant GONZALEZ had just been released from jail.

9      78.   On March 5, 2009, using vague and coded language in a

10 telephone conversation, defendant S. NUNEZ instructed a relative

11 of defendant ALDANA to tell defendant ALDANA that defendant

12 GONZALEZ was instructing defendant ALDANA to not cooperate with

13 law enforcement.

14     79.   On March 6, 2009, using vague and coded language in a

15 telephone conversation, defendants M. TORRES and BLANCO discussed

16 law enforcement's actions against the Puente-13 gang.

17     80.   On March 11, 2009, defendants AYALA and GONZALEZ sent

18 an unindicted Mexican Mafia co-conspirator a portion of defendant

19 GONZALEZ' drug proceeds.

20     81.   On March 13, 2009, an unindicted co-conspirator threw a

21 severed pig's head, labeled with the warning "silver or lead" in

22 Spanish, through the window of defendant ZABALA's residence.

23     82.   On March 19, 2009, an unindicted Mexican Mafia co-

24 conspirator sent defendant AYALA a letter expressing his sympathy

25 following the arrest of defendant GONZALEZ.

26     83.   On April 4, 2009, using vague and coded language in a

27 telephone conversation, defendant EMERT told defendant ALDANA

28 that defendant D. NUNEZ had a copy of a key to defendant EMERT's

residence on Las Vecinas Street in La Puente.

84.   On April 24, 2009, using vague and coded language in a telephone conversation, defendant S. NUNEZ told his girlfriend that defendant S. NUNEZ aspired to rise in the gang and become a member of the Mexican Mafia.

85.   On May 8, 2009, using vague and coded language in a telephone conversation, defendant S. NUNEZ offered to connect defendant D. NUNEZ with defendant S. NUNEZ' methamphetamine supplier.

86.   On May 14, 2009, at the Los Angeles Metropolitan Detention Center, defendant MEYERKAMP and unindicted co-conspirators stabbed Victim 2 in order to prevent Victim 2 from cooperating with law enforcement.

87.   On June 17, 2009, an unindicted co-conspirator mailed $100 to defendants GONZALEZ, BLANCO, and S. NUNEZ in order to satisfy a drug tax.

88.   On July 26, 2009, defendant AYALA sent a letter to an unindicted Mexican Mafia co-conspirator indicating that defendant AYALA and defendant GONZALEZ were only able to send the unindicted Mexican Mafia co-conspirator a payment of $100.

89.   On February 3, 2010, at her residence in La Puente, defendant EMERT possessed methamphetamine, two digital scales, a police scanner, and small plastic baggies.

90.   On April 7, 2010, in a vehicle in Hacienda Heights, defendant TRUJILLO possessed a fully loaded .32 revolver.

91.   On April 7, 2010, at his residence in Phillips Ranch, California, defendant TRUJILLO possessed a digital scale and packing materials for the purpose of distributing narcotics.

SPECIAL SENTENCING ALLEGATIONS

THE GRAND JURY FURTHER ALLEGES THAT:

1.    Beginning on a date unknown, and continuing to on or about June 2, 2010, in Los Angeles County, with the Central District of California, and elsewhere, defendants GONZALEZ, BLANCO, ALDANA, M. TORRES, A. TORRES, S. NUNEZ, D. NUNEZ, TRUJILLO, and EMERT, and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally distribute, and possess with intent to distribute, at least 50 grams of actual methamphetamine or at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A).

2.    On or about July 3, 2006, in Los Angeles County, within the Central District of California, defendants GONZALEZ, BLANCO, S. NUNEZ, and A. TORRES willfully, deliberately, and with premeditation, unlawfully killed with malice aforethought D.D., in violation of California Penal Code, Sections 21a, 31, 187, and 189.

COUNT TWO

[18 U.S.C. § 1962(c)]

1.   Paragraphs 1 through 10 of the General Allegations, and paragraphs 1 through 4 of Count One, are re-alleged and incorporated by reference as though fully set forth herein.

2.   Beginning on a date unknown and continuing to the present, in Los Angeles County, within the Central District of California, and elsewhere, defendants RAFAEL MUNOZ GONZALEZ, also known as ("aka") "Cisco," aka "C" ("GONZALEZ"); CESAR MUNOZ GONZALEZ, aka "Blanco," aka "B" ("BLANCO")June 1, 2010; ABRAHAM ALDANA, aka "Listo" ("ALDANA"); MICHAEL ANTHONY TORRES, aka "Mikey" ("M. TORRES"); ANGEL FRANK TORRES, aka "Smiley" ("A. TORRES"); STEVEN NUNEZ, aka "Flaco" ("S. NUNEZ"); MARIO ALBERTO SANDOVAL, aka "Sonny," aka "Junior" ("SANDOVAL");   ALEJANDRO TRUJILLO, aka "Spantos" ("TRUJILLO"); and SARA EMERT ("EMERT"), and others known and unknown to the Grand Jury, being persons employed by and associated with the Puente-13 criminal enterprise, which was an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully and knowingly did conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise, through a pattern of racketeering activity, that is, through the commission of the acts set forth below.

3.   The pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisted of the following acts:

26

Racketeering Act One

Conspiracy to Distribute Narcotics

4.   Beginning on a date unknown to the Grand Jury and continuing to on or about June 2, 2010, in Los Angeles County, within the Central District of California, and elsewhere, defendants GONZALEZ, BLANCO, ALDANA, M. TORRES, A. TORRES, S. NUNEZ, TRUJILLO, and EMERT, and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally distribute, and possess with intent to distribute, at least 50 grams of actual methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A).

Racketeering Act Two

Possession with Intent to Distribute Methamphetamine

5.   On or about January 26, 2000, defendants GONZALEZ and BLANCO possessed with intent to distribute approximately 50 grams or more, that is, 81 grams, of a mixture or substance containing a detectable amount of methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

Racketeering Act Three

Possession with Intent to Distribute Methamphetamine

6.   On or about January 30, 2002, defendant A. TORRES possessed with intent to distribute approximately 15 grams of a mixture or substance containing a detectable amount of methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

Racketeering Act Four

Possession with Intent to Distribute Methamphetamine

7.   On or about October 9, 2002, defendant S. NUNEZ possessed with intent to distribute 50 grams or more, that is, approximately 131 grams, of a mixture or substance containing a detectable amount of methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

Racketeering Act Five

Possession with Intent to Distribute Methamphetamine

8.   On or about May 24, 2003, defendant SANDOVAL possessed with intent to distribute approximately nine grams of a mixture or substance containing a detectable amount of methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

Racketeering Act Six

Conspiracy to Murder and Murder of D.D.

9.   Defendants GONZALEZ, BLANCO, S. NUNEZ, and A. TORRES committed the following acts, any one of which constitutes Racketeering Act Six:

a.   Beginning on a date unknown and continuing to on or about July 3, 2006, in Los Angeles County, within the Central District of California, defendants GONZALEZ, BLANCO, S. NUNEZ, and A. TORRES, and others, unlawfully, willfully, and with premeditation conspired to kill with malice aforethought D.D., in violation of California Penal Code Sections 21a, 182, 187, and 189.

b.   On or about July 3, 2006, in Los Angeles County,

within the Central District of California, defendants GONZALEZ,
BLANCO, S. NUNEZ, and A. TORRES willfully, deliberately, and with
premeditation, unlawfully killed with malice aforethought D.D.,
in violation of California Penal Code, Sections 21a, 31, 187, and
189.

Racketeering Act Seven

Possession with Intent to Distribute Methamphetamine

10. On or about July 6, 2006, in Los Angeles County, within
the Central District of California, defendants M. TORRES, A.
TORRES, S. NUNEZ, GONZALEZ, and BLANCO possessed with intent to
distribute 50 grams or more, that is, approximately 98.35 grams,
of a mixture or substance containing a detectable amount of
methamphetamine, a schedule II controlled substance, in violation
of Title 21, United States Code, Sections 841(a)(1) and
841(b)(1)(B).

Racketeering Act Eight

Possession with Intent to Distribute Methamphetamine

11. On February 21, 2007, in Los Angeles County, within the
Central District of California, defendant S. NUNEZ possessed with
intent to distribute approximately .81 grams of a mixture or
substance containing a detectable amount of methamphetamine, a
schedule II controlled substance, in violation of Title 21,
United States Code, Sections 841(a)(1) and 841(b)(1)(C).

Racketeering Act Nine

Conspiracy to Murder Rival Gang Members

12. Beginning on a date unknown and continuing to on or
about October 31, 2008, in Los Angeles County, within the Central
District of California, defendants GONZALEZ and TRUJILLO, and

29

1    others, unlawfully, willfully, and with premeditation conspired
2    to kill with malice aforethought rival gang members, in violation
3    of California Penal Code Sections 21a, 182, 187, and 189.
4    Racketeering Act Ten
5    Possession with Intent to Distribute Methamphetamine
6         13.   On or about December 4, 2008, in Los Angeles County,
7    within the Central District of California, defendant ALDANA
8    possessed with intent to distribute approximately 3.17 grams of a
9    mixture or substance containing a detectable amount of
10   methamphetamine, a schedule II controlled substance, in violation
11   of Title 21, United States Code, Sections 841(a)(1) and
12   841(b)(1)(C).
13   Racketeering Act Eleven
14   Possession with Intent to Distribute Methamphetamine
15        14.   On or about February 3, 2010, in Los Angeles County,
16   within the Central District of California, defendant EMERT
17   possessed with intent to distribute approximately 1.8 grams of a
18   mixture or substance containing a detectable amount of
19   methamphetamine, a schedule II controlled substance, in violation
20   of Title 21, United States Code, Sections 841(a)(1) and
21   841(b)(1)(C).
22
23        (All in violation of Title 18, United States Code, Section
24   1962(c).)
25
26
27
28

30

COUNT THREE

[18 U.S.C. § 1959(a)(5)]

1.   At all times relevant to this Indictment, the Puente-13 gang, as described more particularly in paragraphs 1 through 10 of the General Allegations, and paragraphs 1 through 4 of Count One, which paragraphs are incorporated and re-alleged herein as if set forth in full, constituted an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact, which was engaged in, and the activities of which affected, interstate and foreign commerce.   The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

2.   At all times relevant to this Indictment, the Puente-13 gang, through its members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts involving murder and extortion in violation of the California Penal Code; a conspiracy to distribute and the distribution of controlled substances, including methamphetamine and marijuana, in violation of Title 21, United States Code, Sections 841(a)(1) and 846; and acts indictable under Title 18, United States Code, Section 1951 (extortion); and Title 18, United States Code, Section 1512(a)(2) (witness tampering).

3.   Beginning on a date unknown, and continuing until on or about July 3, 2006, in Los Angeles County, within the Central District of California, for the purpose of maintaining and increasing position in the Puente-13 gang, an enterprise engaged

31

in racketeering activity, defendants RAFAEL MUNOZ GONZALEZ, also known as ("aka") "Cisco," aka "C," CESAR MUNOZ GONZALEZ, aka "Blanco," aka "B," STEVEN NUNEZ, aka "Flaco," and ANGEL FRANK TORRES, aka "Smiley," unlawfully conspired to murder rival gang member D.D., in violation of California Penal Code, Sections 21a, 182, and 187, all in violation of 18 U.S.C. § 1959(a)(5).

COUNT FOUR

[18 U.S.C. §§ 1959(a)(1), (2)]

1.   Paragraphs 1 and 2 of Count Three are hereby reincorporated and realleged herein as if set forth in full.

2.   On or about July 3, 2006, in Los Angeles County, within the Central District of California, for the purpose of maintaining and increasing position in the Puente-13 gang, an enterprise engaged in racketeering activity, defendants RAFAEL MUNOZ GONZALES, also known as ("aka") "Cisco," CESAR MUNOZ GONZALEZ, aka "Blanco," aka "B," STEVEN NUNEZ, aka "Flaco," and ANGEL FRANK TORRES, aka "Smiley" unlawfully killed with malice aforethought D.D., in violation of California Penal Code, Sections 21a, 31, and 187, all in violation of 18 U.S.C. §§ 1959(a)(1) and (2).

COUNT FIVE

[18 U.S.C. § 1959(a)(6)]

1.    Paragraphs 1 and 2 of Count Three are hereby incorporated and re-alleged herein as if set forth in full.

2.    Beginning on an unknown date, and continuing until on or about December 3, 2008, in Los Angeles County, within the Central District of California, for the purpose of maintaining and increasing position in the Puente-13 gang, an enterprise engaged in racketeering activity, defendants RAFAEL MUNOZ GONZALEZ, also known as ("aka") "Cisco," aka "C," ABRAHAM ALDANA, aka "Listo," ALEJANDRO TRUJILLO, aka "Spantos," and ADRIAN RODRIGUEZ, aka "Trips," and others, conspired to commit assault with intent to cause serious bodily injury, against incarcerated rival gang members in the Los Angeles County jail system, in violation of California Penal Code Sections 240 and 245, in violation of Title 18, United States Code, Section 1959(a)(6).

COUNT SIX

[18 U.S.C. § 1959(a)(5)]

1.    Paragraphs 1 and 2 of Count Three are hereby incorporated and re-alleged herein as if set forth in full.

2.    Beginning on an unknown date, and continuing until on or about December 3, 2008, in Los Angeles County, within the Central District of California, for the purpose of maintaining and increasing position in the Puente-13 gang, an enterprise engaged in racketeering activity, defendants RAFAEL MUNOZ GONZALEZ, also known as ("aka") "Cisco," aka "C," and ALEJANDO TRUJILLO, aka "Spantos," and others, conspired to murder incarcerated rival gang members in the Los Angeles County jail system, in violation of California Penal Code Sections 21a, 182, 187, and 189, all in violation of Title 18, United States Code, Section 1959(a)(5).

COUNT SEVEN

[21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)]

1.   Paragraphs 1 through 10 of the General Allegations are re-alleged and incorporated by reference as though fully set forth herein.

A.   OBJECTS OF THE CONSPIRACY

1.   Beginning on a date unknown, and continuing to on or about June 2, 2010, in Los Angeles County, within the Central District of California, and elsewhere, defendants RAFAEL MUNOZ GONZALEZ, also known as ("aka") "Cisco," aka "C" ("GONZALEZ"); CESAR MUNOZ GONZALEZ, aka "Blanco," aka "B" ("BLANCO"); ABRAHAM ALDANA, aka "Listo" ("ALDANA"); MICHAEL ANTHONY TORRES, aka "Mikey" ("M. TORRES"); ANGEL FRANK TORRES, aka "Smiley" ("A. TORRES"); STEVEN NUNEZ, aka "Flaco" ("S. NUNEZ"); DANNY ARTHUR NUNEZ, aka "Moe" ("D. NUNEZ"); ALEJANDRO TRUJILLO, aka "Spantos" ("TRUJILLO"); MARIO ALBERTO SANDOVAL, aka "Sonny," aka "Junior" ("SANDOVAL"); SARA EMERT ("EMERT"); OSCAR ZAMORA ("ZAMORA"); ALEX RAMIREZ ("RAMIREZ"); and HENRY ZABALA ("ZABALA"), and others known and unknown to the Grand Jury, knowingly and intentionally conspired and agreed with each other to distribute, and possess with intent to distribute, 50 grams or more of actual methamphetamine, and 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

1.   The objects of the conspiracy were to be accomplished

36

in substance as follows:

Section A of Count One is hereby incorporated by reference.

C.    OVERT ACTS

1.    In furtherance of the conspiracy, and to accomplish the objects of the conspiracy, defendants GONZALEZ, BLANCO, ALDANA, M. TORRES, A. TORRES, S. NUNEZ, D. NUNEZ, TRUJILLO, EMERT, ZAMORA, RAMIREZ, and ZABALA, and others known and unknown to the Grand Jury, committed various overt acts, within the Central District of California and elsewhere, including the overt acts numbered 1 through 91 as set forth in Count One and hereby incorporated by reference, on or about the dates specified therein.

COUNT EIGHT

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)]

Beginning on an unknown date, and continuing to on or about July 6, 2006, in Los Angeles County, within the Central District of California, defendants ANGEL FRANK TORRES, also known as ("aka") "Smiley," MICHAEL ANTHONY TORRES, aka "Mikey," STEVEN NUNEZ, aka "Flaco," RAFAEL MUNOZ GONZALEZ, aka "Cisco," and CESAR MUNOZ GONZALEZ, aka "Blanco," knowingly and intentionally possessed with intent to distribute more than 50 grams, that is, approximately 98 grams, of a mixture or substance containing a detectable amount of methamphetamine, a schedule II controlled substance.

COUNT NINE

[18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(B)(i)]

Beginning on an unknown date, and continuing to on or about July 6, 2006, in Los Angeles County, within the Central District of California, defendants ANGEL FRANK TORRES, also known as ("aka") "Smiley," MICHAEL ANTHONY TORRES, aka "Mikey," STEVEN NUNEZ, aka "Flaco," RAFAEL MUNOZ GONZALEZ, aka "Cisco," and CESAR MUNOZ GONZALEZ, aka "Blanco," knowingly used and carried a firearm, namely, a loaded Smith & Wesson 9mm handgun, with one round chambered; a loaded Hi-Point .45 caliber handgun, with one round chambered; and a modified short-barreled Stevens Model 9478 "Texas Ranger" 12 gauge shotgun, during and in relation to, and possessed that firearm in furtherance of, a crime of violence, namely, conspiracy to commit racketeering, in violation of Title 18, United States Code, Section 1962(d), as charged in Count One; and a drug trafficking crime, namely, conspiracy to distribute and possess with intent to distribute methamphetamine, in violation of Title 21, United States Code, Sections 846, 841(a)(1), as charged in Count Seven; and possession with intent to distribute methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1), as charged in Count Eight.

COUNT TEN

[18 U.S.C. § 924(c)(1)(A)(i)]

Beginning on an unknown date, and continuing to on or about August 28, 2007, in Los Angeles County, within the Central District of California, defendant STEVEN NUNEZ, also known as "Flaco," knowingly used and carried a firearm, namely, a Colt MK IV Series 80 semiautomatic pistol, during and in relation to, and possessed that firearm in furtherance of, a drug trafficking crime, namely, conspiracy to distribute and possess with intent to distribute methamphetamine, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), as charged in Count Seven; and a crime of violence, namely, conspiracy to commit racketeering, in violation of Title 18, United States Code, Section 1962(d), as charged in Count One.

COUNT ELEVEN

[18 U.S.C. § 924(c)(1)(A)(i)]

Beginning on an unknown date, and continuing to or about April 7, 2010, in Los Angeles County, within the Central District of California, defendant ALEJANDRO TRUJILLO, also known as "Spantos," knowingly used and carried a firearm, namely, a loaded Sociedad Alfa .32 caliber revolver, bearing serial number 26707, during and in relation to, and possessed that firearm in furtherance of, a drug trafficking crime, namely, conspiracy to distribute and possess with intent to distribute methamphetamine, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), as charged in Count Seven; and a crime of violence, namely, conspiracy to commit racketeering, in violation of Title 18, United States Code, Section 1962(d), as charged in Count One.

COUNT TWELVE

[18 U.S.C. § 922(g)(1)]

Beginning on an unknown date, and continuing to on or about July 6, 2006, in Los Angeles County, within the Central District of California, defendant MICHAEL ANTHONY TORRES, also known as "Mikey," knowingly possessed a firearm, namely, a loaded Hi-Point .45 caliber handgun, bearing serial number 335883 with one round chambered, and ammunition, in and affecting interstate and foreign commerce.

Such possession occurred after defendant MICHAEL ANTHONY TORRES had been convicted of a felony punishable by a term of imprisonment exceeding one year, namely, possession of a controlled substance, in violation of California Health & Safety Code section 11350(a), in Los Angeles Superior Court case number KA-011430, on or about February 5, 1992.

COUNT THIRTEEN

[18 U.S.C. § 922(g)(1)]

Beginning on an unknown date, and continuing to on or about July 6, 2006, in Los Angeles County, within the Central District of California, defendant ANGEL FRANK TORRES, also known as "Smiley," knowingly possessed a firearm, namely, a modified short-barreled Stevens Model 9478 "Texas Ranger" 12 gauge shotgun, with an obliterated serial number, and ammunition, in and affecting interstate and foreign commerce.

Such possession occurred after defendant ANGEL FRANK TORRES had been convicted of the following felonies, each punishable by a term of imprisonment exceeding one year:

Resisting a peace officer, in violation of California Penal Code section 69, in Los Angeles Superior Court case number KA-027977, on or about July 12, 1995.

Receiving stolen property, in violation of California Penal Code section 496(a), in Los Angeles Superior Court case number KA-023239, on or about July 12, 1995.

## COUNT FOURTEEN

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(C)]

Beginning on an unknown date, and continuing to on or about February 3, 2010, in Los Angeles County, within the Central District of California, defendant SARA EMERT knowingly and intentionally possessed with intent to distribute approximately 1.8 grams of a mixture or substance containing a detectable amount of methamphetamine, a schedule II controlled substance.

COUNT FIFTEEN

[21 U.S.C. § 860a]

Beginning on an unknown date, and continuing to on or about February 3, 2010, in Los Angeles County, within the Central District of California, defendant SARA EMERT knowingly and intentionally possessed with intent to distribute methamphetamine on premises, namely, a residence located in La Puente, California, in which individuals, namely K.W. and L.W., both of whom were under 18 years of age during the above dates, were present and resided.

45

COUNT SIXTEEN

[18 U.S.C. § 113(a)(1)]

On or about May 14, 2009, in Los Angeles County, within the Central District of California, within the territorial jurisdiction of the United States, namely the federal Metropolitan Detention Center in Los Angeles, California, defendants PAUL MEYERKAMP and VICTOR FLORES knowingly and intentionally assaulted, with the intent to commit murder, Victim 2.

46

COUNT SEVENTEEN

[18 U.S.C. § 113(a)(3)]

On or about May 14, 2009, in Los Angeles County, within the Central District of California, within the territorial jurisdiction of the United States, namely the federal Metropolitan Detention Center in Los Angeles, California, defendants PAUL MEYERKAMP and VICTOR FLORES knowingly and intentionally assaulted, with a deadly weapon with the intent to do bodily harm, and without just cause or excuse, Victim 2.

COUNT EIGHTEEN

[21 U.S.C. § 843(b)]

On or about February 4, 2008, in Los Angeles County, within the Central District of California, defendant ALEX RAMIREZ knowingly and intentionally used a communication facility, namely, a telephone, to facilitate the crime of conspiracy to distribute, and possess with intent to distribute, methamphetamine, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), as alleged in Count Seven of the Indictment.

COUNT NINETEEN

[21 U.S.C. § 843(b)]

On or about December 5, 2008, in Los Angeles County, within the Central District of California, defendant ADRIAN RODRIGUEZ, also known as "Trips," knowingly and intentionally used a communication facility, namely, a telephone, to facilitate the crime of conspiracy to distribute, and possess with intent to distribute, methamphetamine, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), as alleged in Count Seven of the Indictment.

COUNT TWENTY

[21 U.S.C. § 843(b)]

On or about January 8, 2009, in Los Angeles County, within the Central District of California, defendant HENRY ZABALA knowingly and intentionally used a communication facility, namely, a telephone, to facilitate the crime of conspiracy to distribute, and possess with intent to distribute, methamphetamine, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), as alleged in Count Seven of the Indictment.

COUNT TWENTY-ONE

[21 U.S.C. § 843(b)]

On or about January 30, 2009, in Los Angeles County, within the Central District of California, defendant MARIO ALBERTO SANDOVAL, also known as ("aka") "Sonny," aka "Junior," knowingly and intentionally used a communication facility, namely, a telephone, to facilitate the crime of conspiracy to distribute, and possess with intent to distribute, methamphetamine, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), as alleged in Count Seven of the Indictment.

COUNT TWENTY-TWO

[21 U.S.C. § 843(b)]

On or about March 11, 2009, in Los Angeles County, within the Central District of California, defendant PATRICIA AYALA, also known as "Dreams," knowingly and intentionally used a communication facility, namely, the mail, to facilitate the crime of conspiracy to distribute, and possess with intent to distribute, methamphetamine, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), as alleged in Count Seven of the Indictment.

A TRUE BILL

"/s/"
_____
Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

TIMOTHY J. SEARIGHT
Assistant United States Attorney
Chief, OCDETF Section

ANDREW BROWN
Assistant United States Attorney
Deputy Chief, OCDETF Section

KEVIN ROSENBERG
Assistant United States Attorney
Deputy Chief, OCDETF Section

CHRISTOPHER K. PELHAM
Assistant United States Attorney
OCDETF Section